

FILED

TSEF

MAR 21 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

In re                               )        Case No. 11-10682-B-13
                                    )
Frances L. Pasley and               )        DC No. MNE-6
Ricky L. Pasley,                    )
                                    )
          Debtors.                  )
_____)

## MEMORANDUM DECISION REGARDING MOTION
## TO CONFIRM MODIFIED CHAPTER 13 PLAN

M. Nelson Enmark, Esq., appeared on behalf of the debtors, Frances L. and Ricky L. Pasley.

Kristen M. Gates, Esq., appeared on behalf of the chapter 13 trustee, Michael H. Meyer, Esq.

Before the court is a motion by the debtors Frances and Ricky Pasley (the "Debtors") to confirm their sixth modified chapter 13 plan (the "Modified Plan"). The "below-median-income" Debtors have successfully modified their mortgage, significantly reducing the monthly payments, and they now seek to shorten the term of this bankruptcy from 60 months to 44 months (the "Motion"). In opposition, the chapter 13 trustee Michael H. Meyer (the "Trustee") contends that reduction of the plan's term does violence to the "good faith" requirement of 11 U.S.C. § 1325(a)(3)[1] (the "Objection"). After oral argument, the parties waived the right to an evidentiary hearing and the matter was submitted on the briefs and declarations.

_____

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23.

Initially, the Debtors were only required to be in bankruptcy for 36 months; however, there was "cause," at the time, to extend the term to 60 months. Because cause no longer exists for permitting the Debtors to remain that long in bankruptcy, and because there is no statutory basis to require that they do so, the Trustee's Objection will be overruled and the Motion will be granted.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. §§ 1325 and 1329, and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).

**Background and Findings of Fact.**

The Debtors reside in the foothill community of Oakhurst, California. They own a modest home, valued on their schedules at $150,000 (the "Residence"), which is encumbered by a loan and deed of trust in favor of Wells Fargo Bank, N.A. (the "Mortgage"). Wells Fargo Bank's proof of claim reports that the Mortgage had an outstanding balance of approximately $203,000, with an arrearage of approximately $7,380, at the commencement of this case. The ongoing monthly payments were initially $1,476.89. The Residence is also encumbered by a second lien in favor of Wells Fargo Bank, for which a claim was filed in the approximate amount of $105,000 (the "Junior Mortgage"). The Debtors also own an automobile, a 2007 Nissan valued in the schedules at $18,000, which serves as collateral for a loan held by Ally Financial in the amount of $15,866 (the "Auto Loan"). One of the Debtors, Frances Pasley, was regularly employed.[2] The other Debtor, Ricky Pasley, was retired and unemployed at the

---

[2] In their responding brief, the Debtors' counsel makes an offer of proof regarding Mrs. Pasley's health issues and asks the court to consider that as a factor in the good faith

commencement of this case.  His only reported source of income was social security and a modest pension.  The Debtors have no dependents and their combined gross monthly income, exclusive of the social security benefits, was reported on schedule I as $4,225.31, placing them below the applicable median income for a household of two in California.[3]  After allowance for reasonable and necessary expenses, their monthly net income stated on schedule J was $250.

**The Original Plan.**  The Debtors commenced this chapter 13 case in January 2011.  Based on their income, the Debtors qualified as "below-median-income" for purposes of determining which sections of the Bankruptcy Code would govern calculation of the "projected disposable income" they had to pay to unsecured creditors.  Their income status also determined the "applicable commitment period," the length of time the Debtors' chapter 13 plan had to provide for those payments.

After several unsuccessful attempts at confirming a chapter 13 plan, the Debtors finally confirmed their fifth modified plan, without an objection from the Trustee, in September 2011 (the "Original Plan").  In paragraph 2.03 of the Original Plan, the Debtors committed to make 60 monthly payments to the Trustee in varying amounts, increasing from $313 in months 1 and 2 to $3,339.02 in months 58 through 60.[4]  The Original Plan put the Mortgage in class 1, meaning that the ongoing postpetition

---

analysis.  However, this Motion can be decided on other grounds, and Mrs. Pasley's medical condition is not relevant.

[3] The annualized current monthly income reported on line 15 of Official Form 22C was $50,703.84.  The applicable median family income was $61,954.

[4] Paragraph 2.03 of this district's standard form chapter 13 plan, applicable at the time of this case, states in pertinent part,

> **Commitment period.**  The monthly plan payments will continue for ___ months, the commitment period of the plan.  Monthly plan payments must continue for the entire commitment period unless all allowed unsecured claims are paid in full over a shorter period of time. . . .

3

payments had to be paid through the Trustee and the prepetition arrearage would be amortized over the 60-month term, making the total paid on account of the Mortgage claim $1,641.49 per month. The Auto Loan was placed in class 2 as a modified secured claim, to be reamortized over the 60-month term with payments of $293.49 per month.

In August 2011, the court granted the Debtors' motion to value the Residence, which effectively made Wells Fargo Bank's Junior Mortgage a "wholly unsecured" claim. Only one other unsecured claim was filed in this case, a credit card obligation to Chase Bank U.S.A. in the approximate amount of $3,000. The Original Plan did not require any distribution to the holders of general unsecured claims. All of the payments over the 60-month term of the Original Plan were devoted to the Mortgage, the Auto Loan, and administrative expenses. In the absence of an objection from the Trustee, there was no dispute that the Original Plan met all of the statutory requirements for confirmation, including the good faith requirement (§ 1325(a)(3)), the chapter 7 liquidation test (§ 1325(a)(4)), and the disposable income test (§ 1325(b)(1)(B)).

**Modification of the Mortgage and the Modified Plan.** In October 2013, after Wells Fargo Bank made several changes to the Mortgage payment, the court authorized the Debtors to enter into a loan modification agreement with the Bank (the "Mortgage Modification"). The Mortgage Modification essentially consolidated the remaining prepetition arrearage with the outstanding principal balance. The debt service burden for the Mortgage decreased by roughly $700 a month, from $1,664.72 to $958.56, presumably through a reduction of the interest rate and extension of the Mortgage term.[5] In support of the motion to authorize the Mortgage Modification, the Debtors filed amended schedules I and J which, after adjusted expenses, reported a new monthly net

---

[5] The Debtors did not lodge a copy of the actual Mortgage Modification agreement with the court or disclose the specific terms. This court typically will authorize debtors to enter into a negotiated modification of their mortgage if the trustee has no objection and the modification does not interfere with performance of the confirmed plan. However, in the absence of a controversy, the court does not review or approve or disapprove the negotiated terms of the modification agreement itself.

1    income in the amount of $749.89.

2          Following the Mortgage Modification, the Debtors filed the present Motion,

3    seeking to replace the Original Plan with the Modified Plan.  Under the proposed

4    Modified Plan, the plan term will be reduced from 60 to 44 months,[6] and the monthly

5    payments to the Trustee will be reduced from the adjusted previous level of $2,060 to

6    $740 for the remaining months.  The Modified Plan moves the Mortgage to class 4,

7    which provides for direct payment by the Debtors.  With the monthly cash flow savings,

8    the Modified Plan also accelerates amortization of the Auto Loan by increasing the

9    distribution to Ally Financial from $293.49 to $696.  The Modified Plan, however,

10   continues to pay nothing to the general unsecured creditors.

11   **Issue Presented.**

12         The Motion drew the Objection from the Trustee, who contends, *inter alia*, that

13   the Modified Plan does not satisfy the "good faith" requirement under § 1325(a)(3).[7]

14   Specifically, the Trustee argues that the Original Plan committed the Debtors to make

15   payments to their creditors for 60 months, and that they cannot now shorten that

16   commitment to 44 months.  The Trustee contends that the cash which the Debtors will

17   save from the Mortgage Modification, i.e., their new monthly net income, should be

18   distributed to the unsecured creditors after the Auto Loan is paid for the remaining

19   months of the 60-month term.  The Trustee does not suggest that the Debtors have

20   engaged in inappropriate actions, simply arguing that the principles of "fairness" and

21   "waiver" support his Objection.  The only issue before the court is whether the good

22   faith required by § 1325(a)(3) prevents these below-median-income chapter 13 debtors,

23   who initially confirmed a 60-month plan, from subsequently modifying their plan to

24   _____

25          [6] The Modified Plan was proposed in the 34th month.

26          [7] The Trustee raised other minor objections to the Modified Plan, but the parties agreed

27   that those issues may be resolved in the confirmation order if necessary.  The Trustee's counsel
     represented that the only unresolved issue, for which a ruling was requested from this court, is

28   the "good faith" term reduction issue.

5

1    reduce the term.

2    **Analysis and Conclusions of Law.**

3        **The Original Plan and Determination of the Plan Term; the "Cause" Factor.**

4    When the Debtors confirmed their Original Plan, the term of that Plan and the required

5    distribution to unsecured creditors were functions of the Debtors' "projected disposable

6    income." It is universally accepted that unsecured creditors must receive through a

7    chapter 13 plan either 100% of their allowed claims, *see* § 1325(b)(1)(A), or "all of the

8    debtor's projected disposable income to be received in the *applicable commitment*

9    *period*," § 1325(b)(1)(B) (emphasis added). The term "applicable commitment period"

10   is defined by statute and determined by a debtor's income level. *See* § 1325(b)(4). It is

11   undisputed that the Debtors' income was, at the commencement of this case, and indeed

12   still is, "below median." For such below-median-income debtors, the "applicable

13   commitment period . . . shall be . . . 3 years." § 1325(b)(4)(A)(i) (hereafter referred to as

14   the "ACP"). The Debtors' income status not only fixes the minimum plan term, but it

15   also determines the "default" maximum plan term. *See* § 1322(d). The Debtors, as

16   below-median-income debtors, were statutorily prohibited from confirming a chapter 13

17   plan that was "longer than 3 years, unless the court, for cause, approves a longer period

18   [not to exceed 5 years]." § 1322(d)(2).

19       This court routinely approves, with the Trustee's consent, chapter 13 plans for

20   below-median-income debtors which exceed 36 months. The most common cause for

21   such extension is the debtor's need for additional time to amortize the mortgage

22   arrearage, the automobile payments, and/or the priority tax claims. *See* 8 Collier on

23   Bankruptcy ¶ 1322.18[1][b], at 1322-61 (16th rev. ed. 2013) ("The usual reason for

24   extension of plan payments beyond three years for debtors subject to section 1322(d)(2)

25   is the debtor's inability to cure a default under section 1322(b)(5) or to pay priority or

26   allowed secured claims in a shorter time." (citations omitted)).

27       Here, the Debtors initially confirmed a 60-month plan, which allowed them to

28   reamortize the Mortgage arrearage and the Auto Loan claim. Those two obligations

6

alone totaled more than $23,000, and it cost the Debtors approximately $475 per month to pay those obligations over a 60-month term. It is apparent from schedules I and J that the Debtors did not have sufficient income to amortize those obligations in less than 60 months. Accordingly, at the time of confirmation, there was cause within the meaning of § 1322(d)(2) to extend the term of the Original Plan to 60 months.

**The Modified Plan and Reduction of the Plan Term.** Now, the circumstances have changed. The Debtors have successfully modified their Mortgage and gained the benefit of a substantial reduction in their monthly debt service burden, presumably enhancing the Debtors' ability to keep both their home and automobile and successfully emerge from bankruptcy. Due to the Mortgage Modification, the Debtors no longer need to cure the Mortgage arrearage through a plan. Further, with the monthly savings resulting from the modification, they are now able to pay off the Auto Loan in 44 months. As a result, there no longer appears to be any cause for an extended plan term beyond the 44 months requested by the Debtors in their Modified Plan.[8]

Modification of a confirmed chapter 13 plan is governed by § 1329. The Modified Plan, if approved, will replace the Original Plan. *See* § 1329(b)(2). Pursuant to § 1329(b), the "projected disposable income" requirement of § 1325(b)(1)(B) is no longer an immediate condition for post-confirmation plan modification; it essentially merges into the good faith test under § 1325(a)(3). *See Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768, 781 (9th Cir. BAP 2005). However, under § 1329(c), the ACP defined in § 1325(b)(4) is still relevant because it controls the maximum plan term. The court is compelled to revisit that issue and determine anew whether there is cause to confirm a modified plan with an extended term:

/ / /

/ / /

---

[8] The Trustee does not object to the proposed 44-month term on any grounds but good faith. Accordingly, the court is satisfied that 44 months is the appropriate amount of time now required to pay the Auto Loan and complete the Modified Plan.

A plan modified under this section may not provide for payments over a period that *expires after the applicable commitment period* under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, *for cause*, approves a longer period, but the court may not approve a period that expires after five years after such time.

§ 1329(c) (emphasis added).

The language of § 1329(c), applicable to the Modified Plan, is consistent with that of § 1322(d), applicable to the Original Plan, in that they both fix a maximum term for chapter 13 plans based on a debtor's income level, which for these below-median Debtors results in a maximum term of 36 months. *Compare* §§ 1329(c), 1325(b)(4)(A)(i), *with* § 1322(d)(2). Again, the maximum term of any modified chapter 13 plan may only be extended for cause, and there is no apparent cause here to support a modified plan with a term longer than 44 months.

The Trustee also suggests that confirmation of the Original Plan established a new ACP of 60 months. Presumably, the Trustee is basing this argument on paragraph 2.03 of the Original Plan, which designates 60 months as the "commitment period of the plan," meaning the number of months the Debtors needed to make payments for the successful completion of that Plan. However, the ACP relevant to this analysis is defined by statute, not by any provision in the Original Plan. At the commencement of this case, the ACP for these Debtors was, and still is, 36 months. Nothing in the Original Plan or applicable law changes that. Even though the Original Plan carried a longer term, the Debtors are statutorily precluded from modifying their chapter 13 plan with a term that exceeds 36 months unless there is cause to do so. *See* § 1329(c). With the Mortgage Modification, there is no longer any cause for the Debtors to have a plan that extends for 60 months.

**Application of the "Good Faith" Test.** It is fundamental that modification of a confirmed chapter 13 plan be "proposed in good faith and not by any means forbidden by law." § 1325(a)(3); *accord Mattson v. Howe (In re Mattson)*, 468 B.R. 361, 367 (9th Cir. BAP 2012) ("[Section 1329(b)(1)'s] reference to § 1325(a) means that the plan as

8

modified must be proposed in good faith under § 1325(a)(3).").  The Debtors have the burden of proof here.  *See Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 436 n.11 (9th Cir. BAP 1997).

The Bankruptcy Code does not define "good faith;" that determination is left to the courts.  "[T]he proper inquiry is whether the [debtors] acted equitably in proposing their Chapter 13 plan."  *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982). Good faith is determined by looking at the "totality of the circumstances," which permits the court to consider (1) whether the debtors misrepresented facts, unfairly manipulated the Bankruptcy Code, or otherwise proposed the plan in an inequitable manner; (2) the history of the debtors' filings and dismissals; (3) whether the debtors intended only to defeat state court litigation; and (4) whether the debtors' behavior was egregious. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999) (considering lack of "good faith" as "cause" for case dismissal); *Meyer v. Lepe (In re Lepe)*, 470 B.R. 851, 857–58 (9th Cir. BAP 2012) (reciting *Leavitt* factors in § 1325(a)(3) analysis).  Here, the Trustee does not contend, neither does the record even suggest, that the Debtors have misrepresented any facts, had any prior history of filings and dismissals, filed this bankruptcy to defeat state court litigation, or engaged in egregious behavior.  By process of elimination then, the only "good faith" factor under *Leavitt* for the court to consider is whether the Debtors are attempting to unfairly manipulate the Bankruptcy Code or otherwise propose their Modified Plan in an inequitable manner.

"Although a party has an absolute right to request modification between confirmation and completion of the plan, modification under § 1329 is not without limits."  *Powers v. Savage (In re Powers)*, 202 B.R. 618, 622 (9th Cir. BAP 1996).  For instance, § 1329(a) "limits the kinds of modifications that can be proposed."  *Id.*  The chapter 13 plan modifications permitted by statute include "increas[ing] or reduc[ing] the amount of payments on claims of a particular class provided for by the plan" and "extend[ing] or reduc[ing] the time for such payments."  § 1329(a)(1), (2).  Here, it appears that the Debtors are attempting to do exactly what § 1329(a) allows: reduce the

9

1    amount of plan payments to the class 1 Mortgage, increase the amount of payments to

2    the class 2 Auto Loan, and decrease the time for such payments by 16 months. The

3    Trustee makes no showing that the Debtors are attempting to manipulate the Bankruptcy

4    Code, and the court is mindful that "[t]aking advantage of a provision of the Code . . . is

5    not an indication of lack of good faith." *Drummond v. Welsh (In re Welsh)*, 465 B.R.

6    843, 854 (9th Cir. BAP 2012), *aff'd*, 711 F.3d 1120 (9th Cir. 2013).

7        Similarly, the court rejects the Trustee's argument that the creditors have some

8    "right" to expect the Debtors to remain in chapter 13 for 60 months. The good faith

9    analysis under § 1325(a)(3) may also consider "the legal effect of the [modification] of a

10   Chapter 13 plan in light of the spirit and purposes of Chapter 13." *Chinichian v.*

11   *Campolongo (In re Chinichian)*, 784 F.2d 1440, 1444 (9th Cir. 1986). As to this factor,

12   the Trustee argues that the Modified Plan had "originally [given] [unsecured] creditors

13   the opportunity to seek increased payments that correspond to [the Debtors'] increase in

14   income for 60 months."[9] In support of his argument, the Trustee relies on a discussion

15   by the Court of Appeals for the Ninth Circuit (the "Ninth Circuit") in *Danielson v.*

16   *Flores (In re Flores)*, 735 F.3d 855 (9th Cir. 2013) (en banc), regarding the minimum

17   duration of chapter 13 plans. However, *Flores* has no application to this case because

18   the debtors in *Flores* were above-median-income with a 60-month ACP and they were

19   attempting to confirm a plan with a lesser term.

20       In *Flores*, the Ninth Circuit concluded that the ACP defined in the Bankruptcy

21   Code acts as a temporal requirement at confirmation, regardless of the debtor's

22   "projected disposable income," holding that "a bankruptcy court may confirm a

23   Chapter 13 plan under 11 U.S.C. § 1325(b)(1)(B) only if the plan's duration is at least as

24   long as the applicable commitment period provided by § 1325(b)(4)." *Id.* at 862

25   (overruling *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008)).

26   The Ninth Circuit addressed the policy reasons why a plan must have a minimum

27   _____

28       [9] Trustee's Suppl. Br. 5:9–10, Jan. 23, 2014, ECF No. 117.

duration: "A minimum duration for Chapter 13 plans is crucial to an important purpose of § 1329's modification process: to ensure that unsecured creditors have a mechanism for seeking increased (that is, non-zero) payments if a debtor's financial circumstances improve unexpectedly." *Id.* at 860. If debtors were not bound to a minimum plan duration, "[c]reditors' opportunity to seek increased payments that correspond to changed circumstances would be undermined." *Id.*

The Trustee offers that analysis to argue that unsecured creditors in this case have an expectation of a 60-month minimum plan duration (i.e., 60 months in which they can potentially seek increased plan payments) based on what the Debtors' Original Plan provided. However, any temporal condition that the Ninth Circuit may have confirmed in *Flores* referred to the statutory ACP, not the term established in the initial plan. *See id.* (noting that "unsecured creditors may request a later modification of the plan to increase the debtor's payments if the debtor acquires disposable income *during the pendency of the applicable commitment period*" (emphasis added)). Thus, in this case, to the extent the unsecured creditors had some expectation regarding the term of the Original Plan, that expectation was limited to the only ACP in play here, and that is 36 months. And creditors do not lose that expectation with the Modified Plan since its proposed term is 44 months.

Another factor the court may consider in the good faith analysis is whether the "proposed modification correlate[s] to [a debtor's] change in circumstances." *Mattson*, 468 B.R. at 371. The Trustee argues that the Mortgage Modification is not a sufficient "changed circumstance" to support a reduction in the Plan's duration. However, the Mortgage Modification is not just a circumstance to be considered here; it is the ultimate reason why the Modified Plan cannot have a 60-month term. By application of § 1329(c), there is no longer cause to justify a 60-month plan.

The court's conclusion here, that the Debtors may propose their 44-month Modified Plan without running afoul of § 1325(a)(3), is also supported by the Bankruptcy Appellate Panel's (the "BAP") pre-BAPCPA decision in *Villanueva v.*

11

1   *Dowell (In re Villanueva)*, 274 B.R. 836 (9th Cir. BAP 2002).  There, the debtor

2   originally proposed a 60-month plan, rather than a 36-month plan, in order to pay some

3   secured claims.  *Id.* at 839.  Before the plan was confirmed, the debtor surrendered the

4   collateral and filed an amended plan with a 36-month term.  *Id.*  The bankruptcy court

5   declined to confirm the amended plan on bad faith grounds and required the debtor to

6   extend the term back to 60 months as a condition of confirmation.  *Id.*  On appeal, the

7   BAP reversed and remanded the case for the bankruptcy court to enter an order

8   confirming the 36-month plan.  *Id.* at 843.

9          The BAP rejected the bankruptcy court's conclusion that the debtor's 36-month

10  plan lacked good faith just because he had initially proposed a 60-month plan.  *See id.* at

11  842–43.  "[T]he proposal of a 36-month plan, standing alone, even where the debtor

12  initially proposed a longer term, does not constitute bad faith."  *Id.* at 842.  The BAP

13  looked to the pre-BAPCPA version of § 1322(d), which did not allow for any chapter 13

14  plan to be longer than 36 months unless the court found cause to extend the term.  *Id.*

15  This showed "the Code's preference for three-year plans" and confirmed that "a creditor

16  could not coerce a debtor into proposing a plan longer than 36 months."  *Id.*  The BAP

17  observed that the debtor "had no motivation to extend the plan term beyond 36 months"

18  after surrendering the collateral:

19             Reducing the plan term may seem opportunistic, perhaps even
           unfair, but we cannot conclude the debtor's proposal of his . . . amended
20         plan was not in good faith. [The debtor's] motivation to stay in his plan 60
           months understandably evaporated once he no longer had the [collateral]
21         he wanted to keep.

22  *Id.* at 843.  Here, the same analysis applies to the Debtors' Modified Plan.  However,

23  instead of § 1322(d), the Debtors can rely on § 1329(c) to defeat any suggestion that they

24  can be coerced into a 60-month term.

25         Finally, the Trustee argues that the Debtors must establish that they lack the

26  ability to continue making plan payments beyond the 44th month of the Plan.  Indeed,

27  this was part of the BAP's rationale in affirming the court's denial of a plan modification

28  in *Mattson*, 468 B.R. 361.  However, *Mattson* is not applicable here.

                                            12

In *Mattson*, above-median-income debtors confirmed a 60-month plan in which they would make monthly payments of $150. *Id.* at 364. Shortly after confirmation, the debtors' disposable income substantially increased. *Id.* at 364–65. They moved to modify the plan by increasing the payments to $1,000 and reducing the term to 36 months. *Id.* at 365. The bankruptcy court denied the proposed modification based on a lack of good faith. *See id.* at 366. The BAP agreed. *Id.* at 372 ("Debtors' contribution of a portion of their increased income to their plan for a three year period does not amount to per se good faith."). The BAP noted that the debtors failed to "point to any facts in the record which showed they would be unable to continue their increased payments beyond the 36 month period that they proposed." *Id.* Thus, "allowing them to shorten the term for their plan would be an inequitable result under *In re Goeb*." *Id.*

While the holding in *Mattson* makes a valid point, the case is distinguishable because the debtors there were above-median-income with a 60-month ACP and they were proposing a modified plan with a term less than that permitted by the Code at confirmation. In contrast to *Mattson*, the Debtors in this case are below-median-income debtors whose proposed Modified Plan, though shorter than the Original Plan, is still longer than their 36-month ACP. The court need not make the same "ability-to-pay" inquiry in this case because the Debtors are not proposing a Modified Plan that runs afoul of their ACP.

**The Trustee's "Waiver" Argument.** Before concluding, the court will address the "waiver" issue raised by the Trustee. With reference to the Ninth Circuit's holding in *Flores*, 735 F.3d 855, he contends that the Debtors chose to confirm a chapter 13 plan with a "temporal period" of 60 months, that the unsecured creditors now have a right to expect either 100% payment on their claims or the benefits of a 60-month plan, and that the Debtors have implicitly waived the right to exit this bankruptcy with a discharge before those 60 months have expired. However, nothing in the applicable law supports the imposition of such a waiver rule. Indeed, the BAP has acknowledged, *in dicta*, that "a debtor's circumstances may justify a reduction in plan length" from what was

13

1   previously set forth in the originally confirmed plan. *Mattson*, 468 B.R. at 373.  Neither

2   does "the doctrine of res judicata [prevent debtors] from shortening the term of their

3   plan." *Id.* at 372; *see also* § 1329(a)(2) (allowing plan modifications that "extend or

4   reduce the time for [paying claims under the plan]"); *Than*, 215 B.R. at 435 ("*Res*

5   *judicata* does not apply to the provisions sought to be modified.").

6         The fundamentals of a waiver situation were explained in *Groves v. Prickett*, 420

7   F.2d 1119 (9th Cir. 1970):

8                A waiver is an intentional relinquishment or abandonment of a
            known right or privilege.  A waiver can be employed only for defensive
9           purposes.  Although it can preclude the assertion of legal rights, it cannot
            be used to impose legal duties.  As minimum requirements to constitute an
10          "implied waiver" of substantial rights, the conduct relied upon must be
            clear, decisive and unequivocal of a purpose to waive the legal rights
11          involved. Otherwise, there is no waiver.

12  *Id.* at 1125–26 (citations omitted).  There is nothing in the record to even suggest that the

13  Debtors intentionally "relinquished or abandoned" the "right or privilege" of completing

14  their bankruptcy in less than 60 months.  They were not required to make such an

15  irrevocable "election" when they confirmed the Original Plan.  The initial 60-month term

16  was required at the time to permit the Debtors to successfully reamortize their secured

17  obligations; thus, there was cause to confirm a plan that exceeded 36 months.  Indeed,

18  the Debtors could not have confirmed a plan with a term greater than 36 months without

19  a showing of cause.  *See* § 1322(d)(2).  Had the Debtors originally proposed a 44-month

20  plan to amortize their secured obligations, the Trustee would have had no basis on which

21  to object and demand a longer term.  The creditors are not prejudiced by the fact that the

22  Original Plan had a 60-month term.  They were not entitled to any distribution based on

23  the disposable income and chapter 7 liquidation tests.

24        The Trustee's Objection is not based on any statutory predicate.  Rather, it is

25  based on equitable principles of "fairness."  He argues, "Debtors originally gave

26  creditors the opportunity to seek increased payments that correspond to their increase in

27  income for 60 months.  To take away this opportunity now without a good faith showing

28

14

1 is *inherently unfair*."[10]

2    In the absence of a statutory basis for locking the Debtors into a 60-month plan,

3 the Trustee is essentially asking the court to exercise its general equitable powers under

4 § 105(a).[11]  However, it is not clear that the court's equitable powers under § 105(a)

5 extend that far.  The U.S. Supreme Court recently addressed the scope and application of

6 § 105(a) to remedy an egregious case of bad faith conduct by the debtor in litigation of

7 an adversary proceeding.  *See Law v. Siegel*, No. 12-5196, 2014 WL 813702 (U.S. Mar.

8 4, 2014), *rev'g* 435 F. App'x 697 (9th Cir. 2011).  The Supreme Court acknowledged

9 that, in addition to the statutory power under § 105(a) to carry out the provisions of the

10 Code, the bankruptcy court "may also possess 'inherent power . . . to sanction abusive

11 litigation practices.'"  *Id.* at *5 (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S.

12 365, 375–76 (2007)).  The Court then admonished, "But in exercising those statutory and

13 inherent powers, a bankruptcy court may not contravene specific statutory provisions

14 . . . . Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is

15 quite impossible to do that by taking action that the Code prohibits."  *Id.*

16    In the proceeding below in *Law v. Siegel*, the Ninth Circuit had followed the

17 precedent established in *Latman v. Burdette (In re Latman)*, 366 F.3d 774 (9th Cir.

18 2004), a decision now abrogated by the Supreme Court's decision.  *See Law*, 435 F.

19 App'x at 698.  The Ninth Circuit applied § 105(a) to bestow upon the bankruptcy court

20 the general equitable power to surcharge a debtor's state law homestead exemption to

21 compensate the bankruptcy estate for over $500,000 of administrative expenses resulting

22 from the debtor's bad faith conduct.  *See id.*

23 / / /

24 / / /

25

26    [10] Trustee's Suppl. Br. 5:9–11 (emphasis added).

27    [11] Section 105(a) provides in pertinent part, "The court may issue any order, process, or
28 judgment that is necessary or appropriate to carry out the provisions of this title . . . ."

15

The Supreme Court rejected all of the arguments for such a remedy, finding that there was no statutory basis in the Bankruptcy Code for doing so. *See Law*, 2014 WL 813702, at *6. "*[F]ederal law* provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." *Id.* (emphasis in original). The Court noted that the "equitable surcharge" conflicted with two provisions of the Bankruptcy Code: § 522(b), which allows a debtor to exempt property in the first place, and § 522(k), which expressly limits the use of exempt property to pay for administrative expenses. *See id.* at *5–6.

Applying the same rationale to this case, there is nothing in the Bankruptcy Code that authorizes this court to force the below-median-income Debtors to remain in bankruptcy for 60 months when first, § 1325(b)(4)(A)(i) only required the Debtors to be in bankruptcy for 36 months and second, there is a specific statutory prohibition, § 1329(c), that requires a showing of cause to even permit an extended term. In light of the holding in *Law v. Siegel*, this court does not have the equitable power to give the Trustee the ruling he seeks.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the Debtors' Modified Plan has been proposed in good faith. The Trustee's Objection will be overruled. The Debtors' Motion to confirm their sixth modified chapter 13 plan will be granted. The Debtors shall submit to the Trustee a proposed confirmation order consistent herewith.

Dated: March _____, 2014

_____
W. Richard Lee
United States Bankruptcy Judge

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instructions to Clerk of Court**
Service List - Not Part of Order/Judgment

     The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

     Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and _X__ Other Persons Specified Below:

Kristen M. Gates, Esq.
Attorney at Law
P.O. Box 28950
Fresno, CA 93729-8950

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721